UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 11-21085-CV-JLK

UNITAS CONTAINERS LIMITED,

    Plaintiff,

v.

OILNET LIMITED,

    Defendant.
_____/

## ORDER DETERMINING CHOICE OF LAW AND REQUIRING ADDITIONAL BRIEFING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Summary Judgment (DE #21), Defendant's Response in Opposition (DE #28), and Plaintiff's Reply (DE #32). Therein, the Parties seek a determination of damages for Plaintiff Unitas Containers Limited's uncontested claim for breach of maritime contract. Upon careful consideration of the pleadings, the Court finds that additional briefing is required before the Court can make a final determination of damages.

In the above-styled action, Plaintiff Unitas Containers Limited ("Unitas"), a Bermudian corporation, alleges that Defendant Oilnet Limited ("Oilnet"), a former British Virgin Island corporation, is in breach of certain maritime contracts for the lease of

intermodal tank containers[1] ("containers") for the international transport of goods. (Am. Compl. ¶¶ 1, 9, & 10, DE #16). Plaintiff Unitas seeks damages in the amount of $661,094.19 for the lease payments in arrears, the replacement value of the five missing containers, the repair costs for the returned containers, and costs of recovery, including attorney's fees. (DE #21-1, at 2).

While it is uncontested that Defendant Oilnet breached the lease contracts, the Parties disagree as to the law that governs the contracts and the resulting damages. As a result of the disagreement on the governing law, the Parties argue for conflicting interpretations of the contractual provisions on damages. For instance, Defendant Oilnet, relying on Florida law, argues that the repair costs for the returned containers should be capped at the fair market value of the containers, while Plaintiff Unitas argues that the repair costs are reasonable as long as they are below the replacement value as set forth in the contract. To resolve this matter, the Court must first determine which law governs the contracts, and then interpret the contractual provisions on damages in accordance with the governing law.

## I. Choice of Law Analysis

Before the Court can interpret the instant contracts, it must first determine which law governs the contract. *See generally Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) ("Contract interpretation is generally a question of law."). The

---

[1] An intermodal tank container is a self-contained steel tank that can be filled with liquids, such as gasoline and similar products, and then loaded aboard ships for transport. (Am. Compl. ¶ 10, DE #16).

contracts at the heart of this action are maritime contracts for the lease of shipping containers. In the Parties' briefings on the summary judgment motion, Plaintiff Unitas argues that English law applies, while Defendant Oilnet argues that Florida law applies.

Typically, federal admiralty law governs maritime contracts, unless the matter is inherently local. *See generally Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 27 (2004) (analyzing choice of law between federal admiralty law or state law). Here, Plaintiff Unitas argues that it has invoked an English choice-of-law clause contained within the contracts. Indeed, Plaintiff Unitas refers to the purported choice-of-law clause in its Amended Complaint and argues for its application in its Reply Supporting its Motion for Summary Judgment. (Am. Compl. § 8, DE #16; Pl's Reply, DE #32, at 2). In response, Defendant Oilnet argues that the provision is not a valid choice-of-law clause because it "fails to state that the agreement will be interpreted and enforced in accordance with English law . . . ." (Def's Response, DE #31, at 2). Upon careful consideration of the contracts and the choice provision at issue, the Court finds that the lease contracts contain a valid and enforceable English choice-of-law clause.

"[C]hoice-of-law clauses 'are presumptively valid where the underlying transaction is fundamentally international in character.'" *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1295 (11th Cir. 1998) (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362 (2d Cir. 1993)). In 1972, the United States Supreme Court articulated the *Bremen* Test to determine the reasonableness and enforceability of choice provisions in international

3

contracts. *M/S/ Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). Under the *Bremen* Test, choice provisions are unreasonable and unenforceable only when:

> (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the provisions would contravene a strong public policy.

*Lipcon*, 148 F.3d at 1292 (citing *Bremen*, 407 U.S. at 15–18).

Turning to the choice provision at issue in the instant matter, it reads: "The proper law shall be English law and any dispute under this Agreement shall be adjudicated by the non-exclusive jurisdiction of the English Courts." (Contract, ¶ 24, DE#16-4, at 8). Contrary to Defendant Oilnet's characterization of the provision, the Court finds that the provision clearly proscribes English law as the law governing the contracts. In addition, the Court finds that the nature of the contracts are sufficiently international as to deem the choice provision presumptively valid. Finally, the Court finds that the instant choice provision does not fall within any of the four categories of the *Bremen* Test. Accordingly, the Court finds that the lease contracts contain a valid and enforceable English choice-of-law clause.

## II. Outstanding Issues of Law That Require Additional Briefing

"When analyzing foreign law, the district court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *Trinidad Foundry & Fabricating v. M/V K.A.S. Camilla*, 966 F.2d 613, 615 (11th Cir. 1992); FED. R. CIV. P. 44.1. Examples of such sources are relevant

statutes, caselaw, and affidavits submitted by attorneys with a thorough knowledge of the foreign law. *See, e.g., Trinidad Foundry & Fabricating*, 966 F.2d at 615–16 (analyzing affidavits of members of the English bar and English caselaw to determine applicable English law).

Here, despite Plaintiff Unitas' correct assertion, in both the Complaint and the summary judgment briefing, that English law governs this matter, Plaintiff Unitas fails to cite to a single authority with respect to English law. As such, the Court has determined that additional briefing that includes reference to sources on English law is necessary to address the following issues of law: (1) whether the lease payments in arrears should be limited to the replacement costs of the containers; (2) whether the repair costs of the returned containers should be capped to the fair market value of the containers; and (3) whether a court should construe an ambiguous contractual provision against the drafter?

Accordingly, having considered the Parties' filings and being otherwise advised, it is hereby **ORDERED, ADJUDGED, and DECREED** that English law governs the contracts at issue in the above-styled action.

It is further **ORDERED, ADJUDGED, and DECREED** as follows:

1. Plaintiff **SHALL** submit supplemental briefing on or before **April 20, 2012**.

2. Defendant shall **RESPOND** on or before **May 21, 2012**.

3. Plaintiff shall **REPLY** on or before **June 4, 2012**.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida on this 20th day of March, 2012.

*[signature]*
JAMES LAWRENCE KING
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

cc:

*Counsel for Plaintiff*
**J. Stephen Simms**
Simms Showers, LLP
20 S Charles Street
Suite 702
Baltimore, MD 21201
410-783-5795
Fax: 783-1368
Email: Jssimms@simmsshowers.com

**Farris James Martin , III**
Stroup & Martin
119 SE 12th Street
Fort Lauderdale, FL 33316-1813
954-462-8808
Fax: 462-0278
Email: fmartin@strouplaw.com

*Counsel for Defendant*
**David Morse McDonald**
McDonald & McDonald
1393 SW 1st Street
Suite 200
Miami, FL 33135
305-643-5313
Fax: 643-4990
Email: dmm@mcdonaldattorneys.com